UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND D.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br><br>    Defendant. | Case No. 24-cv-04209-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 21, 24 |

Plaintiff Raymond D. moves[2] for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Plaintiff's motion, denies the Commissioner's motion, and remands the case for further proceedings consistent with this order.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on March 20, 2017. Administrative Record ("AR") 192-216. The application was initially denied on August 7, 2017 and again on reconsideration on September 25, 2017. AR 116-31. An Administrative Law Judge ("ALJ") held a hearing on June 21, 2018 and issued an unfavorable decision on October 12, 2018. AR 18-35. After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Plaintiff filed his opening brief on March 21, 2025. [Docket No. 18.] On June 20, 2025, Plaintiff filed an unopposed motion to file an amended opening brief to correct an unintentional misquote. [Docket No. 24.] Finding good cause, the court grants the motion and considers the amended brief as Plaintiff's motion for summary judgment.

U.S.C. § 405(g). AR 1158-71. The Honorable Thomas S. Hixson remanded the case for further proceedings on October 29, 2020. AR 1172-98 (Civil Case No. 3:19-cv-07594-TSH, Dkt. 32).

Pursuant to Judge Hixson's order, the case was remanded to the same ALJ for a new hearing on May 6, 2021. AR 1199-1203. The ALJ held three hearings, on January 26, 2023, May 4, 2023, and February 21, 2024. AR 1046-1133. The ALJ issued another unfavorable decision on March 14, 2024. AR 1011-35. Plaintiff now seeks review in this court. [Docket No. 1.]

In the decision following remand, the ALJ determined that Plaintiff has the following severe impairments: bipolar II disorder; depressive disorder; generalized anxiety disorder (GAD); attention deficit hyperactivity disorder (ADHD), combined type; amphetamine abuse in early remission; and polysubstance dependence (20 CFR 416.920(c)). AR 1016. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 1017. The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [He can] perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform routine tasks (not necessarily simple) with few changes, but with no fast-paced production line work (e.g., factory work on an assembly line where people down the line depend on his speed and accuracy). He should have no more than occasional interaction with supervisors, coworkers, and the public. The claimant should not have access to contact with illegal substances (e.g., no law enforcement or pharmacy settings).

AR 1019.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform jobs existing in the economy, including hospital cleaner, industrial cleaner, and hand packager, the ALJ concluded that Plaintiff is not disabled. AR 1026.

## II. ISSUES FOR REVIEW

1. Did the ALJ improperly weigh the medical opinions?
2. Did the ALJ err in its credibility determination?
3. Is the ALJ's paragraph C finding supported by substantial evidence?
4. Is the ALJ's RFC finding supported by substantial evidence?

2

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

### A. The ALJ's Weighing of the Medical Opinions

Plaintiff contends the ALJ erred in finding persuasive the opinion of non-examining, testifying medical expert Michael Lace, PsyD, while finding unpersuasive the opinion of examining psychologist Elizabeth Walser, MSW, PsyD.

#### 1. Legal Standard

"For social security disability claims filed prior to March 27, 2017, an ALJ is required to assess medical opinions 'based on the extent of the doctor's relationship with the claimant.'" *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022)). Plaintiff filed his application for disability benefits on March 20, 2017;

3

therefore, the pre-March 27, 2017 framework applies. *See* AR 192-216. Under this framework, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

"If the opinion of an examining doctor is contradicted by another doctor, it 'can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.'" *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quoting *Lester*, 81 F.3d at 830-31). "An ALJ needs less substantial evidence to reject an examining physician's opinion than to reject an [sic] treating physician's opinion." *Id.* The ALJ can meet her burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Dr. Lace's Opinion

At the May 4, 2023 hearing, Dr. Lace testified that he had reviewed Plaintiff's medical

4

record and concluded that the evidence established that Plaintiff suffered from severe impairments including bipolar II disorder, depression, GAD, ADHD, and substance abuse. AR 1102-03. Dr. Lace opined that the evidence showed that Plaintiff's general cognitive functioning appeared normal and that mental status exams were also generally normal, citing Plaintiff's treatment notes from 2016, 2018-2019, and 2022 which described normal psychiatric presentation. AR 1104 (citing AR 381, 958, 1561-1690, 1750, 3303). Dr. Lace noted that the record supported some attention and concentration issues but opined that those instances may be due to active intoxication or substance use. AR 1104 (citing AR 919). Dr. Lace assessed a mild limitation in the area of remembering, understanding, and applying information; a moderate limitation in the area of social interaction; a moderate limitation in the area of concentration, persistence, or pace; and a mild-to-moderate limitation in the area of adaptation. AR 1105. He provided an RFC assessment consistent with the ALJ's findings. AR 1105-06. At the February 21, 2024 supplemental hearing, Dr. Lace testified that he had reviewed the additional records at Exhibits 24F and 25F, and his opinion remained unchanged. AR 1059. Dr. Lace discounted Dr. Walser's opinion because her evaluation was done while Plaintiff was incarcerated and he did not believe it was representative of Plaintiff's normal functioning in a non-prison setting. AR 1060.

The ALJ gave "great weight" to Dr. Lace's opinion. AR 1023. The ALJ opined that Dr. Lace "completed a thorough review and summary of the record which formed the basis of his very detailed and well-supported testimony. His opinion is consistent with the totality of medical evidence, as well as generally consistent, albeit more thorough, with the opinions of the State agency medical consultants," Christmas Covell, Ph.D. and D. Funkenstein, M.D. AR 1023. Dr. Covell reviewed the record and assessed on July 25, 2017 that Plaintiff had a moderately limited ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers; and a not significantly limited ability to maintain socially appropriate behavior, although Plaintiff would do best with "routine, superficial contact [with] others in the workplace." AR 92-93. Dr. Funkenstein reviewed the record and reached the same conclusions on September 20, 2017. AR 108-09. Both State agency medical

1 consultants discounted Dr. Walser's opinion because she "relies heavily on the subjective report of
2 symptoms and limitations provided by the individual, and the totality of the evidence does not
3 support this opinion." AR 94; AR 110.

### 3. Dr. Walser's Opinion

On June 21, 2017, Dr. Walser (supervised by Lesleigh Franklin, Ph.D.) performed a psychological evaluation of Plaintiff while he was incarcerated at Santa Rita Jail. AR 890-900.[3] Dr. Walser reviewed Plaintiff's records and performed seven testing procedures: a clinical interview, mental status examination, Quality of Life Rating Scale, Wechsler Adult Intelligence Scale, Wide Range Assessment of Memory and Learning, Amen Brain Checklist, and Behavior Rating Inventory of Executive Function. AR 890. Plaintiff reported that he had not used any substances since he went to jail in January 2017, and his symptoms had persisted despite his sobriety. AR 890-91. At the time of the evaluation, Plaintiff was housed in administrative segregation and had repeatedly been placed there due to mental health concerns and former gang affiliations. AR 891-92. Based on the evaluation, Dr. Walser determined that Plaintiff would have extreme impairment in his ability to accept instructions and respond to criticism from supervisors. AR 898-99. Dr. Walser determined Plaintiff would have marked impairment in his ability to maintain attention and concentration for two-hour segments, get along and work with others, interact with the public, respond to changes in a routine work setting and deal with normal work stressors, complete a normal workday and workweek without interruptions from psychological symptoms, and maintain regular attendance and be punctual. AR 899. She also determined he would have mild impairment in his ability to understand, remember, and carry out very short and simple instructions. *Id.*

The ALJ gave partial weight to Dr. Walser's opinion, finding that the significant limitations described by Dr. Walser were "unsupported by adequate explanation, inconsistent with the totality of the medical evidence (including the recent testimony of Dr. Lace), inconsistent with some of the claimant's testimony, as well as internally inconsistent with her own observations and

---

[3] Judge Hixson provided a detailed summary of Dr. Walser's findings in his prior order remanding the case. AR 1180-82.

findings." AR 1024. Regarding Plaintiff's limitations in getting along with others and working under a supervisor, the ALJ identified the parts of the record which contradicted Dr. Walser's findings. Thus, the ALJ cited a Prison Questionnaire filled out by Plaintiff on June 19, 2017 where he stated that his ability to get along with authority figures is "fair" and his ability to get along with other inmates is "good." *See* AR 251. The ALJ cited Plaintiff's testimony at the February 21, 2024 hearing where he stated that he had never been fired from a job or had issues with an employer. *See* AR 1070-1071. The ALJ generally referenced "examination and treatment notes by providers [Plaintiff] saw while incarcerated," which did not "indicate such significant limitations or difficulties with social interaction, including his interactions with the providers." AR 1024.

In addition, the ALJ characterized Dr. Walser's findings as "speculative" because she used the word "likely" in reaching her assessment. AR 1024; *see* AR 898 ("If [Plaintiff] were in a full time work situation now, he would . . . likely have marked problems paying attention. . . . [He] would likely have marked difficulties completing a normal workday without intrusive psychological symptoms, and marked problems getting to work on a consistent basis."). The ALJ noted that the Amen Attention index score relied on by Dr. Walser was based on Plaintiff's subjective allegations, "rather than solid clinical or objective findings." AR 1024.[4] The ALJ further noted that "formal processing speed testing could not be completed" in the prison setting. AR 1024.

### 4.   Analysis

As an examining physician, Dr. Walser's opinion is entitled to more weight than Dr. Lace's opinion as a non-examining physician. *See Lester,* 81 F.3d at 830. The ALJ could only discount Dr. Walser's opinion in favor of Dr. Lace's opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

---

[4] The Amen Brain System Checklist looks at "reported symptoms in the areas of depression, anxiety, anger, attention, and obsessive/compulsive behaviors." AR 894. According to Dr. Walser, Plaintiff demonstrated "very high" elevations in depression and attention/impulse control, and "high" elevations in anxiety and anger. *Id.*

7

The court finds that the rationales provided by the ALJ are not specific and legitimate reasons supported by substantial evidence to discount Dr. Walser's opinion. First, the ALJ identified two responses in Plaintiff's Prison Questionnaire as contradicting Dr. Walser's conclusions. However, Plaintiff's self-assessment about his "fair" ability to interact with authority figures and his "good" ability to get along with other inmates is undercut by the fact that he was repeatedly housed in administrative segregation while in prison and reported being happier in solitary confinement rather than with the general prison population. AR 891-92, 1073. The ALJ failed to consider this record evidence, which actually supports Dr. Walser's opinions. Moreover, Plaintiff's self-reported social skills in prison are not commensurate with his social skills in a work setting. Social Security regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00(C)(6)(b).

Next, the ALJ pointed to Plaintiff's testimony in 2024 that he had never been fired from a job or had issues with an employer. However, the ALJ failed to consider that Plaintiff has not worked since the alleged onset of his disability in 2010; in other words, Plaintiff had not been employed for the fourteen years preceding his 2024 testimony. AR 255 (Work History Report); 1066.[5] Under such circumstances, Plaintiff's testimony that he had not been fired or had problems with an employer says little about his current ability to work, given that he had not worked for well over a decade when he made the statement.

Next, the ALJ generally referenced "examination and treatment notes by providers [Plaintiff] saw while incarcerated," but did not provide specific citations to treatment notes that purportedly contradict Dr. Walser's findings. AR 1024. In addition, the ALJ faulted the treatment notes for not indicating "significant limitations or difficulties with social interaction, including [Plaintiff's] interactions with the providers." AR 1024. As Judge Hixson already explained in his

---

[5] Plaintiff is alleging disability beginning on January 1, 2010. AR 1014. The last job Plaintiff reported in his Work History Report ended in January 2010. AR 255.

prior order, "the ALJ's reliance upon the *absence* of any evidence showing that plaintiff had a 'problem getting along with others' is an assertion that, by definition, is not supported by substantial evidence.'" *Baladad v. Saul*, No. 19-CV-00246-PJH, 2020 WL 1503654, at *13 (N.D. Cal. Mar. 30, 2020) (emphasis in original); *see also* AR 1193-1194. Furthermore, "the ability to present oneself in a reasonable manner to a medical provider specifically trained to interact with individuals with mental limitations does not refute a finding that Plaintiff was, for example, markedly limited in his ability to communicate and perform effectively in a normal work setting." *Petro S. v. Comm'r of Soc. Sec.,* No. 2:19-CV-1620-DWC, 2020 WL 1062946, at *2 (W.D. Wash. Mar. 5, 2020).

Next, the ALJ characterized Dr. Walser's findings as "speculative" because she used the word "likely" in her narrative explanation of Plaintiff's limitations. AR 1024. However, the ALJ failed to note that Dr. Walser did not use "likely" when describing Plaintiff's marked functional limitations, marked trouble getting along with the public, and marked trouble with co-workers. AR 898. At the same time, the ALJ credited Dr. Walser's opinion that Plaintiff had mild limitations in the ability to understand, remember, and carry out very short and simple instructions, even though Dr. Walser used the word "likely" when describing Plaintiff's limitations in that area. AR 898. The last page of Dr. Walser's report sets out her determination of Plaintiff's various limitations without any note or addendum suggesting that some of her findings are more speculative than others. AR 899. The court finds that Dr. Walser's use of the word "likely" in some parts of her narrative explanation is not a specific and legitimate reason to discount her medical opinion.

The ALJ also states that "there is no attempt in the opinion to adequately explain how [Dr. Walser] came to these conclusions" of marked limitations. AR 1024. As Judge Hixson also noted in his prior order, Dr. Walser explained at length in her report that her examination indicated that Plaintiff experiences frequent disruptions from psychological symptoms, he has longstanding problems following rules and managing impulses, and formal testing showed impairment in memory and attention, behavioral regulation, and perceptual reasoning. AR 893-98. Dr. Walser explained that Plaintiff's narcissistic and antisocial tendencies make it hard for him to trust people

9

and get the help he needs in the community; and that Plaintiff would have extreme impairment in his ability to accept instructions and respond to criticism from supervisors, as he does not take criticism well and thinks he knows best. AR 898-99. For example, Dr. Walser noted that Plaintiff reported being a "priest" in the Church of Satan and justified bad behavior as "an exercise of individual freedom." AR 897. The court finds that the ALJ erred in stating that Dr. Walser made "no attempt . . . to adequately explain" her findings. AR 1024.

The ALJ took issue with Dr. Walser's use of the Amen Attention index score because it was based on Plaintiff's subjective allegations, "rather than solid clinical or objective findings." AR 1024. "Psychological evaluations may appear to rely heavily on the patient's self-reports, especially compared to evaluation in other medical fields, '[b]ut such is the nature of psychiatry. . . . [U]nlike a broken arm, a mind cannot be x-rayed.'" *Petro*, 2020 WL 1062946, at *2 (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). A clinical interview and a mental status evaluation are objective measures and cannot be discounted as a "self-report," even if the physician's opinion is also partially based on the patient's self-report of symptoms. *See Buck*, 869 F.3d at 1049. Dr. Walser conducted a clinical interview, a mental status exam, and other tests which generated objective measures. The Amen Brain Checklist was only one of several procedures Dr. Walser administered in reaching her findings; even without the Amen Attention index score, Dr. Walser supported her opinion regarding Plaintiff's attention-related limitations with Plaintiff's historical record, his WRAML2 Attention Index, and his BRIEF GEC score. AR 896. The ALJ erred in discounting Dr. Walser's opinion by singling out her use of the Amen Attention index score and largely ignoring the battery of other tests and procedures she employed.

The ALJ further noted that Dr. Walser was not able to conduct formal processing speed testing. This was because Dr. Walser's interview and testing had to be modified because she was placed with Plaintiff in a non-contact visiting room assignment due to an administrative error. AR 893, 895. However, Dr. Walser observed that Plaintiff worked more slowly on tasks requiring his careful attention, and she observed that a slower processing speed is associated with depression and ADHD. AR 895. Dr. Walser noted that Plaintiff's General Ability Index score was likely an over-estimate of his overall cognitive abilities because it did not take his speed and memory issues

10

into account. *Id.*

Dr. Walser assessed mild-to-moderate limitations in Plaintiff's ability to perform at a consistent pace. AR 898-99. The ALJ did not err in finding this particular opinion less persuasive because of the lack of formal processing speed testing. However, to the extent the ALJ discounted Dr. Walser's other opinions about Plaintiff's limitations because of the lack of formal processing speed testing, the ALJ erred by not explaining how that testing bore on those opinions. *See* AR 1018, 1024.

The ALJ relied heavily on "the recent testimony of Dr. Lace" to discount Dr. Walser's conflicting opinion; but "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician." *See Lester*, 81 F.3d at 831. The ALJ generally stated that Dr. Lace's opinion is "very detailed and well-supported" and "consistent with the totality of the medical evidence, as well as generally consistent . . . with the opinions of the State agency medical consultants." AR 1023. But the ALJ did not identify the "totality of the medical evidence" that supported Dr. Lace's opinion and contradicted Dr. Walser's opinion. This case is distinguishable from cases upholding the Commissioner's decision to reject the opinion of an examining physician based on the testimony of a nonexamining medical advisor. *See Lester*, 81 F.3d at 831 (discussing cases). In those cases, "an abundance of evidence" supported the Commissioner's decision, such as "laboratory test results," "contrary reports from examining physicians," "testimony from the claimant that conflicted with her treating physician's opinion," and/or "medical reports contained in the record." *Id.* Here, the opinions of the nonexamining physicians do not by themselves justify the rejection of the only opinion by an examining physician in the record.

The ALJ determined that Dr. Walser's opinion was "unsupported by adequate explanation, inconsistent with the totality of the medical evidence (including the recent testimony of Dr. Lace), inconsistent with some of the claimant's testimony, as well as internally inconsistent with her own observations and findings." AR 1024. For the reasons stated above, the court finds that the ALJ erred in concluding that Dr. Walser's opinion was unsupported by adequate explanation. The court also finds that the ALJ failed to identify anything in the medical record, in Plaintiff's

11

testimony, or in Dr. Walser's observations and findings that is inconsistent with Dr. Walser's opinion. Finally, the ALJ erred in relying on Dr. Lace's testimony as substantial evidence in itself to reject Dr. Walser's conflicting opinion. In sum, the ALJ failed to meet her requirement to provide "specific and legitimate reasons that are supported by substantial evidence in the record" to give Dr. Walser's opinion only partial weight while giving Dr. Lace's opinion great weight. *Lester,* 81 F.3d at 830-31.

### B. The ALJ's Credibility Determination

Plaintiff argues that the ALJ failed to provide specific, clear or convincing reasons for rejecting Plaintiff's testimony regarding subjective pain or symptoms.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective

12

symptoms requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 1020. As the ALJ determined that Plaintiff was not malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). "[T]he 'clear and convincing' standard requires an ALJ to show [her] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The ALJ did not do so here.

The ALJ referred generally to Plaintiff's "allegations of being unable to perform any work." AR 1020. The ALJ also stated: "The claimant does not appear to have received any mental health treatment after 2017 which is consistent with his testimony, but also inconsistent with an individual alleging disability from his various mental impairments." AR 1022.

13

The Ninth Circuit has repeatedly required the ALJ to "identify specifically which of [Plaintiff's] statements she found not credible and why." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Ninth Circuit cases "do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But "the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Colvin*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1103). For example, in *Colvin*, the ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.'" *Id.* at 493. The Ninth Circuit reversed the ALJ's decision: "Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error." *Id.* at 494.

Here, the ALJ provided a summary of evidence in the medical record from 2014 to 2017 indicating that Plaintiff's symptoms were generally mild when taking psychotropic medications. AR 1021-22. But (with one exception discussed below), the ALJ failed to specify which parts of Plaintiff's testimony she deemed not credible. The ALJ's general reference to Plaintiff's "allegations of being unable to perform any work" falls short of the requirement to specifically identify which of Plaintiff's statements the ALJ found not credible and why.

The ALJ did identify one statement that Plaintiff made in September 2017 to his treatment provider that he has difficulty maintaining employment due to "conflict with his supervisors." AR 1022 (citing AR 1890). The ALJ explained that this was inconsistent with Plaintiff's February 21, 2024 hearing testimony that he had never been fired from a job or had issues with an employer. AR 1070-71. The court finds that the ALJ clearly and convincingly explained why Plaintiff's September 2017 statement that he has "conflict with his supervisors" should not be credited. The court finds that the ALJ has not met the "clear and convincing" standard with respect to any other part of his statements or testimony.

14

### C. The ALJ's Paragraph C and RFC Findings

Plaintiff argues the ALJ erred by finding his impairments do not meet or equal a listing and in determining Plaintiff's RFC. As the reasoning for these findings turns in large part on the ALJ's consideration of the medical opinions and Plaintiff's credibility, any decision on these arguments is premature.

### D. Remedy

Plaintiff argues that the court should reverse the decision of the Commissioner and remand with instructions to award benefits. Mot. 19. Plaintiff argues that the ALJ should have credited Plaintiff's testimony and the opinion of Dr. Walser, and if the ALJ did so, Plaintiff would have been found disabled according to Listing 12.04 of the Adult Listing of Impairments. Plaintiff also asserts that the ALJ should have included Plaintiff's moderate limitations in the ability to complete a normal workday or workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, and if the ALJ did so, Plaintiff would have been found disabled according to the Vocational Expert's testimony at the February 21, 2024 hearing. AR 1089. As such, Plaintiff contends there are no outstanding issues of fact which would be resolved by further development of the record.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017). However, under the "credit-as-true" rule, the court may grant a direct award of benefits if three conditions are satisfied. *Id.* The first condition is that the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citing *Treichler*, 775 F.3d at 1100–01). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id*. (citing *Treichler*, 775 F.3d at 1101). And third, if "no outstanding issues remain and further proceedings would not be useful," the court has discretion to find the "relevant testimony credible as a matter of law." *Id*. (citing *Treichler*, 775 F.3d at 1101).

The court finds that the second condition of the credit-as-true rule is not satisfied because

there are still outstanding issues that must be resolved. Although the ALJ failed to specifically identify it, there may be evidence in the record that contradicts Plaintiff's testimony and the opinion of Dr. Walser. There also may be evidence that supports the ALJ's RFC finding even with Plaintiff's moderate limitations. "Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler*, 775 F.3d at 1105.

The court finds that remand for further proceedings is appropriate. On remand, in addition to Plaintiff's credibility and the medical opinions, the ALJ shall also determine whether reconsideration of the other issues raised by Plaintiff is required as well.

## V.     CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion and REVERSES the ALJ's decision. This case is REMANDED for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: September 24, 2025

_____
Donna M. Ryu
Chief Magistrate Judge